IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANCES M. FLOOD,<br><br>Defendant. | MEMORANDUM DECISION<br><br><br>Case No. 2:07-CR-485   DB<br><br>Judge Dee Benson |

The defendant, Frances M. Flood, moves the court to dismiss counts I through VI of the Second Superseding Indictment for failure to satisfy the applicable statutes of limitation (dckt. no. 146) and to dismiss all counts of the Second Superseding Indictment based on double jeopardy (dckt. No. 144). Ms. Flood also moves the court to vacate her criminal conviction, arguing her trial counsel was impaired by a conflict of interest (dckt. No. 161). Counsel for both parties presented oral argument on all three motions on March 2, 2010. Ronald J. Yengich and Elizabeth Hunt appeared on behalf of Ms. Flood. Stewart C. Walz and D. Loren Washburn appeared on behalf of the United States. The court, having considered both written and oral argument, DENIES the defendant's motions.

BACKGROUND

On January 15, 2003, the SEC filed a civil suit against Frances Flood, Susie Strohm, and

ClearOne Communications alleging Ms. Flood and her co-defendants employed a scheme to defraud, committed securities fraud, made false statements to accountants, falsely filed with the SEC, kept false books and records, and aided and abetted false books and records violations. A year later, Ms. Flood stipulated to the entry of judgment. The judgment enjoined Ms. Flood from violating the securities laws' anti-fraud and record keeping and reporting requirements. It also prohibited Ms. Flood from acting as a corporate officer or director of any publicly held company and required her to disgorge $71,000 plus interest and to pay a $71,000 civil penalty.

Prior to the entry of the civil judgment, Ms. Flood also entered into an Employment Separation Agreement with ClearOne Communications. In the agreement, Ms. Flood agreed to resign from her position as CEO of ClearOne and dissolve her employment contract (worth approximately $650,000), to transfer her shares of stock in ClearOne and cancel all of her stock options in return for $350,000, and to cooperate with ClearOne in the SEC action. In return, ClearOne agreed to indemnify Ms. Flood for any liability and for all reasonable attorney fees and cost incurred by her in the SEC action or any related proceedings, including paying reasonable defense costs incurred by Flood in defending matters that arose from her tenure as an officer for ClearOne. This agreement was subject to Utah Code Section 16-10a-904, which requires the party seeking indemnification to affirm in writing that her actions were in good faith and in the best interest of the company.

In addition to the SEC's civil suit, the Utah office of the U.S. Attorney brought criminal charges against Ms. Flood and Ms. Strohm. ClearOne cooperated with the U.S. Attorney's investigation and prosecution of the criminal action. Ms. Flood was aware of the forthcoming

criminal prosecution and on June 21, 2007 signed an agreement in which she agreed to toll the statutes of limitation. This agreement tolled the termination of the limitations period until July 26, 2007 for the "period that would otherwise expire from June 25, 2007 through July 26, 2007." In return, the government agreed to allow Ms. Flood's attorneys to meet with the prosecutor before any charges were filed. The agreement also included a clause in which Flood acknowledged that she was entering the agreement freely, voluntarily, and with knowledge of the consequences. Ms. Flood and her attorney, Richard Van Wagoner, signed the agreement.

On July 25, 2007, the government filed an indictment charging Ms. Flood with conspiracy based on overt acts, the last of which occurred in September 2002, false statements to accountants based on letters dated August 9, 2002 and September 20, 2002, and securities fraud based on a June 29, 2002 shipment to nondistributors in Australia.

On November 14, 2007, the government filed its First Superseding Indictment, which added a new false statement count based on a November 14, 2002 letter to Ernst & Young. On January 31, 2008, the government filed its Second Superseding Indictment, adding three perjury charges based on statements made during depositions taken on February 20, 2003 and March 4, 2003 as part of the SEC civil action.

Ms. Flood retained Max Wheeler and Snow Christensen & Martineau, the same counsel that represented her in the SEC action, to represent her in the criminal action, and ClearOne, as agreed, paid the legal fees. However, as the criminal case proceeded, ClearOne began to question the reasonableness of the fees and costs incurred in Ms. Flood's defense and stopped paying them in May 2008. A few months later, Ms. Flood, still represented by Snow

3

Christensen & Martineau, sued ClearOne, seeking to enjoin the company to pay her legal fees. About the same time, Ms. Flood successfully moved to continue the trial in her criminal case. Her counsel argued that they could not provide effective assistance of counsel due to ClearOne's nonpayment of their fees. This court entered a preliminary injunction on January 6, 2009 in the attorney fees action, a little less than a month before Ms. Flood's trial, ordering ClearOne to pay Ms. Flood's legal fees. The dispute over these fees continues today with some fees paid and ClearOne now asserting Ms. Flood was not acting in good faith and seeking reimbursement for all fees paid.

The United States tried its criminal case to a jury in February 2009. After a three-week trial, the jury found Ms. Flood guilty on all counts.

Ms. Flood now moves the court to dismiss counts I through VI of the Second Superseding Indictment as barred by the applicable statutes of limitation and to dismiss all of the superseding indictment based on the longstanding prohibition on double jeopardy. Additionally, Ms. Flood moves the court to vacate the criminal conviction, arguing that a conflict of interest affected the performance of her trial counsel. The court will address each request in turn.

I. THE SUPERSEDING INDICTMENTS SATISFIED THE STATUTES OF LIMITATION.

Statutes of limitation operate as a bar on prosecution. *United States v. Cooper*, 956 F.2d 960, 961-62 (10th Cir. 1992). Therefore, the government may only prosecute and seek punishment for an offense that is charged in an indictment filed within the applicable statute of limitation. Ms. Flood argues that the prosecution of the criminal charges against her is barred by statutes of limitation because she did not validly waive the termination of the limitation period

and the superseding indictments impermissibly broadened the original indictment. The court concludes that these arguments are without merit.

### A. *Ms. Flood Waived the Statutes of Limitation Bar for a Period of Time.*

Even though statutes of limitation operate as a bar on prosecution, a defendant may waive the applicability of a statute of limitation period. *Cooper*, 956 F.2d at 961-62. The waiver must be an express waiver and the defendant must knowingly and voluntarily consent to it. *Id.*

In this case, Ms. Flood validly waived the statute of limitation bar as to any offenses occurring between June 25, 2002 through July 26, 2002 because she voluntarily agreed in writing to toll the termination of the statute of limitation for that period of time. Ms. Flood argues that the waiver was not valid because it was not entered in open court. There is no existing precedent to support such a requirement. In fact, courts have repeatedly upheld written waivers entered outside of court as validly extending statutes of limitation. *See United States v. Del Percio*, 870 F.2d 1090, 1093-94 (6th Cir. 1989); *United States v. Caldwell*, 859 F.2d 805, 806-07 (9th Cir. 1988). The law only requires that statute of limitation waivers be knowingly and voluntarily entered, which occurred in this case. Ms. Flood entered the agreement to waive the statute of limitation bar on the advice of her attorney. In the written waiver she represented that she agreed to extend the statute of limitation deadline voluntarily, aware of the consequences, after "full and careful thought," and with the advice of counsel. Therefore, the court concludes that the written waiver executed by Ms. Flood validly extended the statute of limitation deadline for the period that otherwise would have run between June 25, 2007 and July 26, 2007.

B. *All Counts Were Filed Within the Applicable Statutes of Limitation.*

After an original indictment is filed, the government may file a superseding indictment to clarify the original charges or add new charges. If the superseding indictment is used to clarify, it "is not barred by the statute of limitations unless it broadens or substantially amends the charges in the first indictment." *United States v. Davis*, 953 F.2d 1482, 1491 (10th Cir. 1992). If the superseding indictment adds new charges, "the date of the original indictment tolls the limitations period as to charges alleged" therein, *id.*, but does not affect the statute of limitation period for the new charges. Therefore, the government may only add new charges or broaden the charges of the original indictment if the superseding indictment is filed within the applicable statute of limitation for the new or broadened offense.

In this case, the government properly charged each count against Ms. Flood prior to the expiration of the applicable statute of limitation for each offense. Ms. Flood argues that the superseding indictments should not relate back to the date of the original indictment because the superseding indictments broadened the charges alleged in the original indictment by adding new substantive counts. This is a misapplication of the rule in *Davis*. As discussed above, Ms. Flood agreed to extend the statute of limitation deadline and the government timely charged all of the counts listed in the original indictment prior to the new deadline, July 26, 2007. Four of these counts carried through the superseding indictment without alteration. Therefore, the filing date on the superseding indictments for these charges relates back to the original indictment. One charge, the conspiracy count was altered to add a new overt act, a November 14 false statement. But, since this act occurred within five years of the First Superseding Indictment, the count

6

satisfies the statute of limitation without relating back. *See United States v. Qayyum*, 451 F.3d 1214, 1218 (10th Cir. 2006). Other than altering that count, the superseding indictments charged new counts that applied to offenses committed later in time than the actions in the original indictment. As charged in the superseding indictment, each count was filed within the statute of limitation for each offense. For example, the false statement count added by the First Superseding Indictment occurred on November 14, 2002; the first superseding indictment was filed November 14, 2007, just within the five-year statute of limitation. Ms. Flood is correct that this count did broaden the overall criminal charges for which Ms. Flood was being prosecuted, but it did not alter the substance of the original counts. The same was true for the perjury counts added by the second superseding indictments. Therefore, the filing dates for the original counts relate back to the date the counts were filed and the dates of each superseding indictment apply to each new count charged.

In sum, Ms. Flood executed a valid waiver of the statute of limitation bar that extended the statute of limitation deadline. With this new deadline, the government timely charged each count in the original indictment. This filing date applied to these counts even when they were joined with new, substantively different charges in the superseding indictments. Therefore, the government did not violate the statutes of limitation for any count charged. Accordingly, Ms. Flood's Motion to Dismiss is DENIED.

## II. IMPOSING SANCTIONS IN A CIVIL JUDGEMENT AND PUNISHMENT IN A CRIMINAL CONVICTION DOES NOT VIOLATE DOUBLE JEOPARDY.

"The [Double Jeopardy] Clause protects only against the imposition of multiple *criminal*

punishments for the same offense." *Hudson v. United States*, 522 U.S. 93, 99 (1997). To determine whether a punishment is criminal or civil, the court first considers whether the legislature "either expressly or impliedly" indicated "a preference for one label or the other." *Id.* If the court finds that the legislature intended to create a civil penalty, it must then "inquire[] further" into whether "the statutory scheme [is] so punitive either in purpose or effect . . . to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* (quoting *Rex Trailer Co. v. United States*, 350 U.S. 148, 154 (1956)). This inquiry is guided by the seven *Kennedy* factors.

> (1) whether the sanctions involve an affirmative disability or restraint;
> (2) whether it historically has been regarded as a punishment;
> (3) whether it comes into play only on a finding of scienter;
> (4) whether its operation will promote the traditional aims of punishment–retribution and deterrence;
> (5) whether the behavior to which it applies is already a crime;
> (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and
> (7) whether it appears excessive in relation to the alternative purpose assigned.

The factors are considered in relation to the statute "on its face" and "only the clearest proof will suffice to override legislative intent." *Id.* at 100.

The courts have repeatedly applied this test to sanctions resulting from enforcement actions brought by or adjudicated in federal agencies without finding a double jeopardy violation. *See SEC v. Palmisano*, 135 F.3d 860 (1998); *LaCrosse v. Commodities Future Trading Comm'n*, 137 F.3d 925 (7th Cir. 1998). For example, in the leading case, *Hudson v. United States,* the Supreme Court found that money penalties and professional debarment were not "historically viewed as punishment" and do not involve "affirmative disability or restraint."

8

522 U.S. at 104. Additionally, the court noted that "neither sanction [came] into play 'only' on a finding of scienter." *Id.* It also determined that while the conduct for which the sanctions were imposed may also be criminal, this fact was "insufficient to render the money penalties and debarment . . . criminally punitive . . . ." *Id.* at 105. Similarly, the court held that the "mere presence" of a deterrent effect was also "insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.'" *Id.*

Applying the *Kennedy* factors to her case, Ms. Flood argues that the sanctions imposed in the SEC action should be considered criminal because the conduct for which Ms. Flood was sanctioned could also, as it did, result in criminal prosecution and that a claim for fraud requires scienter. Additionally, Ms. Flood argues that the sanctions are penalties designed to have a deterrent and retributive effect. Finally, Ms. Flood argues that the sanctions imposed in the SEC action were excessive. Ms. Flood also argues that the circumstances of her case are unique and "involve very unusual punitive consequences flowing from the SEC suit." (Pl.'s Reply 2). Ms. Flood argues that in addition to the monetary penalties and debarment, the SEC action also resulted in her separation agreement with ClearOne and ClearOne's subsequent breach of that agreement. According to Ms. Flood, ClearOne's decision to halt attorney fee payments impaired her attorneys' ability to defend her and diverted their attention to pursuing ClearOne for its breach. Ms. Flood claims that "[t]hese consequences are properly characterized as affirmative disabilities and restraints which are on par with imprisonment, because the SEC settlement arrangements with ClearOne disabled and restrained Flood's ability to defend in this federal action." (Pl.'s Reply 3).

9

Despite Ms. Flood's arguments pointing out the unique circumstances of her case, the court concludes that, like the sanctions in *Hudson*, the sanctions imposed in the civil action do not implicate double jeopardy. In fact, the civil judgment assigned the same sanctions as those in *Hudson*–money penalties, professional debarment–plus disgorgement. These sanctions aren't historically viewed as punishment, nor do they involve an affirmative restraint. They may have a deterrent effect; in truth, the court hopes that they do since deterrence "serves civil as well as criminal goals."

Ms. Flood's arguments about the unique circumstances of her case do not divert the court from reaching the same conclusion as the *Hudson* court. These facts fall outside the court's double jeopardy analysis because they are consequences outside of the securities statutory scheme. The separation agreement and its breach are not penalties assignable under the SEC statute and moreover were not part of the judgment in the SEC action. Unfortunately, civil and criminal cases commonly result in difficult consequences, many of which may feel like restraints, but such consequences do not implicate double jeopardy. Therefore, the court concludes that the double jeopardy clause does not apply to Ms. Flood's criminal conviction and DENIES Ms. Flood's Motion to Dismiss.

III. FLOOD'S CONVICTION WAS NOT TAINTED BY A CONFLICT OF INTEREST.

   A. *Ms. Flood Failed to Timely File the Motion to Vacate.*

Using Federal Rule of Criminal Procedure 33, a defendant may move the court to "vacate any judgment and grant a new trial." Absent new evidence, this motion must be made "within seven days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). A motion filed after

this date is untimely unless the party's failure to file the motion is due to excusable neglect. *Id.* advisory committee's note ("[I]f for some reason the defendant fails to file the underlying motion for new trial within the specified time, the court may nonetheless consider that untimely underlying motion if the court determines that the failure to file it on time was the result of excusable neglect."). In the Tenth Circuit, we evaluate four factors to determine whether a failure to timely file a motion can be pardoned as excusable neglect: "(1) the danger of unfair prejudice to the party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *United States v. Vogl*, 374 F.3d 976, 981 (10th Cir. 2004).

In this case, Ms. Flood's second motion to vacate, which is now before the court, was filed 11 months after the verdict and 151 days after she retained new counsel. Moreover, the motion was filed 68 days after her current counsel filed the two motions previously discussed in this decision. Despite this delay, Ms. Flood argues that her late filing should be pardoned as excusable neglect because the late filing will not prejudice the government and the delay was not excessive nor in the control of Ms. Flood. The court disagrees with this assessment. First, the extended delay will likely prejudice the government and have a negative impact on the proceedings in this case. The government, the judicial system, and the public have an interest in the finality of criminal verdicts and in the timely sentencing of those convicted. For this reason, motions for new trial are intentionally short. An eleven-month delay in sentencing has, not just a potential, but an actual negative impact on these proceedings. In this case, the government is

seeking not only incarceration, but also restitution. Any delay in sentencing Ms. Flood creates a delay in the recouping of the victims losses. Second, the failure to bring this motion was not beyond Ms. Flood's control. Ms. Flood argues that her convictions should be vacated because her trial counsel operated under a conflict of interest. This argument does not rely on new evidence or discovery, but instead is based on facts Ms. Flood was aware of before, during, and after her trial. Even accounting for the fact that Ms. Flood was represented by the allegedly conflicted counsel at the time, Ms. Flood still did not file her Motion to Vacate until 151 days after she retained new counsel. Once she obtained new counsel, it was well within her control to file a Rule 33 motion. Therefore, under the traditional excusable neglect test, the court concludes that Ms. Flood's belated filing was not excusable neglect and that the court is without jurisdiction to consider it.

However, in addition to the traditional excusable neglect factors, Ms. Flood argues that her motion should be considered because it raises a "structural defect" that undermines the fairness of Ms. Flood's trial. According to Ms. Flood "such conflicts of interest are the type of issue courts have full authority to recognize, investigate and remedy when presented with a sufficient factual basis." (Def.'s Reply Mem. 4). It is unclear to the court, but it appears that Ms. Flood appears to be incorporating an appellate standard for determining whether an error is reversible. *See United States v. Lott*, 433 F.3d 718, 722 (10th 2006) ("[S]tructural errors[] involve defects in the trial mechanism and affect the framework within which the trial proceeds from beginning to end.") (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306-07 (1991)). The court is unaware of any precedent extending this doctrine to excuse failure to meet trial-level

12

motion deadlines or substantively to a conflict of interest, but assuming *arguendo* that it does, as discussed below the court concludes that no such defect was present in this case when Flood's representation was not impinged by an actual conflict of interest.

B. *Ms. Flood's Trial Counsel Did Not Labor under a Conflict of Interest.*

"The Sixth Amendment . . . entitles a defendant in a criminal case to the effective assistance of competent counsel." *United States v. Gallegos*, 39 F.3d 276, 277-78 (10th Cir. 1994). This includes the "right to representation that is free from conflicts of interest." *Id.*; *see also Wood v. Georgia*, 450 U.S. 261, 271 (1981). "In the context of a conflict of interest claim where there was no objection at trial . . . the client must demonstrate an actual conflict of interest which adversely affected his lawyer's performance." *United States v. Alvarez*, 137 F.3d 1249, 1251 (10th Cir. 1998) (quoting *United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir. 1990)). "[D]efense counsel's performance [is] adversely affected by an actual conflict of interest if a specific and seemingly valid or genuine alternative strategy was available to defense counsel, but it was inherently in conflict with his duties to others or to his own personal interests." *Bowie*, 892 F.2d 1494, 1500 (10th Cir. 1990). If a defendant is able to show an actual, as opposed to a potential, conflict and that the conflict affected the adequacy of her representation, the law does not require her to show prejudice in order to obtain relief. *Culyer v. Sullivan,* 446 U.S. 335, 350 (1980).

In this case, the defendant has failed to show an actual conflict in her trial representation. Ms. Flood argues that her indemnity agreement with ClearOne created a conflict of interest for her trial counsel by making a third party, ClearOne, financially responsible for her defense. The

court concludes no actual conflict existed. First, Ms. Flood's trial counsel, Snow Christensen & Martineau, represented only her. ClearOne had separate counsel. So, Snow Christensen & Martineau had no conflicting ethical duties or conflicting responsibilities in representing Ms. Flood. Second, even accepting Flood's assertion that ClearOne had a financial interest in Ms. Flood being found guilty, ClearOne's financial responsibility for Ms. Flood's defense still did not create a conflict of interest. Unlike, other third-party fee arrangement cases, ClearOne had no ability to direct the legal strategy of Ms. Flood's defense nor did ClearOne stand to benefit from a particular legal or factual argument. Instead, the only motivation on which ClearOne could act was to keep Ms. Flood's fees within a reasonable range. Therefore, Snow Christensen & Martineau did not operate under a conflict of interest while representing Ms. Flood.

Because the court concludes that Ms. Flood's trial counsel did not labor under a conflict of interest, it is not required to address whether Ms. Flood's interest were "compromise[d] for the benefit of another party." *Alvarez*, 137 F.3d at 1251. The court notes, however, that based upon the record in this case, Ms. Flood's representation was is no way compromised. It is true that cost-savings measures were put in place and that Ms. Flood's attorneys were at times involved in efforts to collect their fees from ClearOne. Such circumstances are not unique to Ms. Flood's trial counsel but instead a fact-of-life in the legal practice.

In conclusion, the court concludes that Ms. Flood's motion to vacate was not timely filed. Assuming *arguendo* that this failure is excusable, the court concludes that Ms. Flood's representation was not impaired by an actual conflict of interest. Accordingly, Ms Flood's Motion to Vacate Convictions is DENIED.

IT IS SO ORDERED.

Dated this 7th day of April, 2010.

BY THE COURT

_Dee Benson_

Dee Benson
United States District Court Judge